IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SAMIRA RANDOLPH-ALI, : | |
| Plaintiff : | No. 1:10-CV-2387 |
| : | |
| v. : | (CHIEF JUDGE KANE) |
| : | (MAGISTRATE JUDGE PRINCE) |
| CITY OF HARRISBURG, ET AL., : | |
| Defendants : | |

**REPORT AND RECOMMENDATION**

**I. Procedural Background**

Pursuant to an Order entered on January 6, 2011 (Doc.16), the Honorable Yvette Kane referred the Defendants' pending motion to dismiss to the undersigned for the purpose of preparing a Report and Recommendation.

Plaintiff initiated this action on October 18, 2010 in the Court of Common Pleas of Dauphin County and, thereafter, it was removed and filed in this court on November 18, 2010 (Doc. 6). The complaint alleges constitutional and civil rights violations pursuant to 42 U.S.C. § 1983.[1] Named as Defendants are the City of Harrisburg, Pennsylvania; Harrisburg Bureau of Police; Charles Kellar, Deborah J. Reigle, Walter B. Martin, III, Daniel M. Webber, Sharon L. Capello, and Derek

---

[1] Other claims for intentional torts and constitutional violations have been dropped against the moving Defendants.

Moody, all officers in the Harrisburg Police Department; the County of Dauphin; Dauphin County Prison; and Dominick L. DeRose, Warden of the Dauphin County Prison. On November 23, 2010, Defendants County of Dauphin, Dauphin County Prison and Warden DeRose filed a motion to dismiss (Doc. 3) and thereafter filed a supporting brief on December 14, 2010 (Doc. 11). Plaintiff filed a brief in opposition to the motion on December 23, 2010 (Doc. 14), to which Defendant filed a reply brief on January 5, 2011 (Doc. 15). The matter is now ripe for disposition. For the reasons that follow, it will be recommended that the Defendants' Motion to Dismiss be granted.

**II. Factual Background**

On April 4, 2009, Harrisburg police responded to a call of domestic violence at the home of the Plaintiff. In an altercation with her husband, Plaintiff maintains she was slapped, choked and prevented from leaving the residence. When police arrived, Mr. Ali went upstairs while Plaintiff explained to them what had happened. Although she requested police remove her husband from the house, Plaintiff alleges that police informed her they could not remove him from the house since the residence was his home as well. Mr. Ali then returned to the presence of the officers with a laceration to his arm. Plaintiff avers that she and her husband were then questioned separately and, despite her lack of knowledge of

2

his injury and his subsequent acknowledgment that his wound was self-inflicted, she was placed under arrest for her involvement in the altercation.

Plaintiff was then transported to the Harrisburg police station, and subsequently transferred to the Dauphin County Prison.[2] She was placed on suicide watch, which required her to ring a buzzer for assistance. Plaintiff maintains that she rang the buzzer to receive toilet paper, but that prison staff told her to stop ringing it and gave her the middle finger. As a result of these actions, Plaintiff asserts she had a bowel movement but, being unable to clean herself, was forced to remain in her own feces for hours.

Plaintiff thereafter entered a guilty plea to resisting arrest, and an aggravated assault charge against her was dropped. The present action followed.

## III. Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of claims that fail to assert a basis upon which relief can be granted. *See* FED. R. CIV. P. 12(b)(6). When deciding a motion to dismiss for failure to state a claim, the court is required to accept as true all of the factual allegations in the complaint

---

[2] The are several additional allegation in the complaint concerning the manner of her arrest, transport, and confinement at police headquarters which are not relevant to the present motion inasmuch as they do not concern the actions of the moving defendants.

3

and all reasonable inferences that can be drawn therefrom. Langford v. City of Atlantic City, 235 F.3d 845, 847 (3d Cir. 2000) (citing Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)). "The complaint will be deemed to have alleged sufficient facts if it adequately put[s] the defendant on notice of the essential elements of the plaintiff's cause of action." Id. The court will not dismiss a complaint for failure to state a claim unless it appears beyond a doubt that "no relief could be granted under any set of facts that could be proved consistent with the allegations." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002).

In rendering a decision on a motion to dismiss, a court should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Nami v. Fauver, 82 F.3d 63, 66 (3d Cir. 1996). First, the court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff. Innis v. Wilson, 2009 U.S. App. LEXIS 12424, *4-5 (3d Cir. 2009) (*citing* Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, — U.S. —, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere

4

conclusory statements, do not suffice."). The court must then determine whether the complaint states a plausible claim for relief, which is a "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557-58 (2007)).

The Third Circuit has outlined a two-part analysis that courts should utilize when deciding a motion to dismiss for failure to state a claim. Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir.2009). First, the factual and legal elements of a claim should be separated. In other words, while courts must accept all of the complaint's well-pleaded facts as true, they may disregard any legal conclusions. Second, courts then decide whether the facts alleged in the complaint are sufficient to demonstrate that the plaintiff has a "'plausible claim for relief.'" Id. at 210 (quoting Iqbal, 129 S. Ct. at 1950). That is, a complaint must do more than allege the entitlement to relief, its facts must show such an entitlement. Id. at 211.

**IV. Discussion**

The motion to dismiss raises three issues: (1) whether the complaint states a cause of action against Warden DeRose; (2) whether Warden DeRose is entitled to qualified immunity as a matter of law; and (3) whether the complaint states a cause

5

of action for municipal liability against the Defendants.[3] Each of these will be discussed *in seriatim.*

### (A) Warden DeRose

Moving Defendants challenge the sufficiency of the complaint by asserting that Plaintiff has failed to allege the requisite personal involvement of Warden DeRose in the actions giving rise to her complaint. Indeed, claims brought under § 1983 cannot be premised on a theory of *respondeat superior*. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim. As explained in Rode:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

Rode, 845 F.2d at 1207.

Plaintiff maintains that Rode is distinguishable in that the complaint alleges that Warden DeRose failed to properly train and/or supervise prison staff and is "responsible for the customs and policies practiced and condoned" at the prison.

---

[3] Plaintiff has withdrawn other claims asserted in the complaint, *to wit.*, §1983 claim against the prison, constitutional claims, intentional tort claims, negligence, ethnic intimidation and §1985 liability. *See* Doc. 14, p. 1-2.

Doc. 14, p. 5. Absent direct involvement, a plaintiff can hold a supervisor liable for failure to train or supervise if the supervisor has shown deliberate indifference to the plight of the person involved. Carter v. City of Philadelphia, 181 F.3d 339, 357 (3d Cir.1999); Pair v. Danberg, No. 08-458, 2008 WL 4570537, *2 (D. Del. Oct.14, 2008). Deliberate indifference is more than a mere lack of ordinary due care, however; it is a state of mind equivalent to a reckless disregard of a known risk of harm. Farmer v. Brennan, 511 U.S. 825, 834 (1994). To constitute deliberate indifference as defined in Farmer, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. "The deliberate indifference standard set out in Farmer is a high one[.]" Beers-Capitol v. Whetzel, 256 F.3d, 120 137 (3d Cir. 2001).

To maintain a failure to supervise claim, a plaintiff must "(1) identify with particularity what the supervisory official failed to do that demonstrates his deliberate indifference, and (2) demonstrate a close causal relationship between the identified deficiency and the ultimate injury." Kis v. County of Schuylkill, 866 F. Supp. 1462, 1474 (E.D. Pa.1994) (citing Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir.1989)). Deliberate indifference requires a plaintiff to demonstrate that the "official knows of and disregards an excessive risk to inmate health and

7

safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." Farmer, *supra* at 837.

Defendants assert that the Plaintiff has failed to state a claim against Warden DeRose under a failure to train/supervise theory because the allegations of the complaint against him and the other moving Defendants fail to rise to the level of a constitutional violation. As noted above, Plaintiff alleges that she rang the buzzer to request toilet paper, that this request was refused and that she was forced to remain in her own feces for hours.

The Constitution does not mandate that prison cells be comfortable, or even clean. Courts examining challenges to prison cell conditions have repeatedly held that short periods of confinement in unsanitary conditions do not rise to the level of a constitutional violations. Harris v. Fleming, 839 F.2d 1232, 1235 (7th Cir.1988) (depriving prisoner of toilet paper, soap, toothpaste and toothbrush while keeping him in filthy, roach-infested cell for a period of several days was not a constitutional violation); Castro v. Chesney, Civ. A. No. 978-4983, 1998 WL 767467, *9 (E.D. Pa. Nov. 3, 1998) (holding that denial of toilet paper for "a few days" is not sufficient to state a constitutional violation); Briggs v. Heidlebaugh, 1997 WL 319081, at *2 (E.D. Pa. May 22, 1997) (holding that

8

denial of toilet paper for two days does not infringe upon a prisoner's constitutional rights). Moreover, Plaintiff has not alleged any serious risk of harm posed to her heath or safety by the lack of toilet paper and/or by the presence of fecal matter of her body for several hours. *See* Rudacille v. Hoke, 2009 WL 464480, *6 (M.D. Pa. Feb. 24, 2009) (plaintiff failed to establish that the refusal by corrections officers to give him toilet paper posed a substantial risk of serious harm to him); Jones v. Horn, 1998 WL 297636, *6 (E.D. Pa. June 4, 1998) (the delay of delivery of toilet paper does not present an excessive risk to inmate health or safety).

There being no risk of serious harm to Plaintiff's health or safety, Plaintiff is unable to demonstrate the requisite deliberate indifference of Defendant DeRose. Inasmuch as the allegations of the complaint fail to state a serious risk of harm, it is not possible to demonstrate Defendant DeRose was aware of, and disregarded, such a hazard. *See* Michel v. McGettigan, No.07-2069, 2008 WL 4845247 (D.N.J. Nov. 5, 2008) (finding plaintiff failed to present evidence that officers engaged in a pattern or practice of refusing to allow or assist detainees in using the toilet. Plaintiff claimed that sheriff's officers failed to respond to his repeated requests for assistance in using the toilet while he was being detained following a hearing, which resulted in the plaintiff subsequently soiling himself. Plaintiff did not

contest that the toilet was working but only that it was missing toilet paper). Consequently, the allegations of the complaint, although they may assert an uncomfortable situation or condition that Plaintiff endured while she was at the Dauphin County Prison, do not rise to the level of a constitutional violation. It is recommended that the motion to dismiss be granted with respect to Defendant DeRose.

### *(B) Qualified Immunity*

Nonetheless, assuming, arguendo, that the complaint properly stated an action against the Warden DeRose, Defendants maintain he is entitled to qualified immunity on any such claims. The doctrine of qualified immunity provides "government officials performing discretionary functions ... [a shield] from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The qualified immunity doctrine "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." Rowe v. Romano, 940 F. Supp. 798, 802 (E.D. Pa.1996); Hunter v. Bryant, 502 U.S. 224, 229 (1991). Qualified immunity is an affirmative defense which must be pleaded by the defendant official. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.

1988); Verney v. Pennsylvania Turnpike Comm'n, 881 F. Supp. 145, 149 (M.D. Pa. 1995); Siegert v. Gilley, 500 U.S. 226, 231 (1991). Because the Supreme Court characterizes the issue of qualified immunity as a question of law, Elder v. Holloway, 510 U.S. 510, 511 (1994), the resolution of immunity questions early in the proceedings is encouraged. Saucier v. Katz, 533 U.S. 194, 200-201 (2001); Hunter v. Bryant, 502 U.S. 224, 227 (1991) (per curiam).

The United States Supreme Court in Saucier v. Katz, 533 U.S. 194 (2001), established a two part test for analyzing qualified immunity claims. *See* also Curley v. Klem, 298 F.3d 271 (3d Cir. 2002); Bennett v. Murphy, 274 F.3d 133 (3d Cir. 2002). The initial inquiry in a qualified immunity examination is whether "the facts taken in the light most favorable to the plaintiff show a constitutional violation." Bennett, 274 F.3d at 136. "Once it is determined that evidence of a constitutional violation has been adduced, courts evaluating a qualified immunity claim move to the second step of the analysis to determine whether the constitutional right was clearly established. That is, in the factual scenario established by the plaintiff, would a reasonable officer have understood that his actions were prohibited?" Id. Accordingly, the violation of a clearly established right must be such that a reasonable official would understand that his actions violate the right at issue; the official action need not be unlawful, but "in light of

11

pre-existing law, the unlawfulness must be apparent." Anderson v. Creighton, 483 U.S. 635, 640 (1987) (citations omitted).

Thus, qualified immunity will serve as a shield from suit if a defendant official could have reasonably believed that the actions in question were lawful in light of clearly established law and the information the defendant possessed at the time. Hunter v. Bryant, 502 U.S. at 227 (quoting Anderson, 483 U.S. at 641). Officials who "reasonably but mistakenly" conclude that their actions were lawful are still entitled to immunity. Id. This standard "'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" Id. at 229 (citing Malley v. Briggs, 475 U.S. 335, 343 (1986)).

With respect to the allegations against Defendant DeRose, the question of qualified immunity is resolved at step one of the inquiry: there is no constitutional violation. Reedy v. Evanson, 615 F.3d 197 (3d Cir. 2010) (if no constitutional right would have been violated were allegations established, there is no necessity for further inquiries concerning qualified immunity.) As noted above, in cases of similar factual scenarios as presented in the instant case, there is ample case law holding that the deprivation of toilet paper for several hours does not state a constitutional violation. The law as it existed at the time of this incident would not have put a reasonable person in Defendant DeRose's position on notice that he

12

was violating a clearly established right inasmuch as several courts, including this court, have concluded that such facts do not state a constitutional violation. To the extent the complaint states a cause of action against Defendant DeRose, he is entitled to qualified immunity. The motion to dismiss should, consequently, be granted on this issue.

*(C) Municipal Liability*

"A public entity . . . may be held liable for the violation of a constitutional right under 42 U.S.C. § 1983 only when the alleged unconstitutional action executes or implements policy or a decision officially adopted or promulgated by those whose acts may fairly be said to represent official policy." Reitz v. Bucks County, 125 F.3d 139, 144 (3d Cir. 1997) (citing Monell v. New York City Dep't of Social Svcs., 436 U.S. 658, 690-91 (1978)). "A policy is an official proclamation or edict of a municipality, while a custom is a practice that is 'so permanent and well-settled as to virtually constitute law.'" Crouse v. South Lebanon Twp., 668 F. Supp. 2d 664, 675 (M.D. Pa. 2009) (Conner, J.) (quoting Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996) (quoting, in turn, Andrews v. City of Phila., 895 F.2d 1469, 1480 (3d Cir. 1990) (citations omitted)). However, "[a] custom need not be 'formally approved by an appropriate decision-maker,' but must be 'so widespread as to have the force of law.'" Id. at 675-76

13

(quoting Natale v. Camden County Corr. Facility, 318 F.3d 575, 584 (3d Cir. 2003) (quoting, in turn, Board of County Com'rs of Bryan County, Okl. v. Brown, 520 U.S. 397, 404 (1997)).

Thus, to establish a Monell claim against the Defendants under §1983, Plaintiff must show "(1) the existence of a custom or policy of the municipality and (2) that the municipality's employees violated the plaintiff's civil rights while acting pursuant to this custom or policy." Winslow v. The Borough of Malvern Pennsylvania, 2009 WL 4609590, at *6 (E.D. Pa. Dec. 7, 2009) (citing Monell, *supra*.) A municipality's failure to adequately train its officers and employees gives rise to a cause of action under §1983 if the deficient training reflects a deliberate indifference to an individual's civil rights and is "closely related to the ultimate injury." Kline ex rel Arndt v. Mansfield, 255 F. Appx. 624, 629 (3d Cir. 2007) (citing City of Canton v. Harris, 489 U.S. 378, 388 (1989)).

The Third Circuit has noted that establishing municipal liability on a Monell claim for inadequate training is difficult. Reitz, *supra* at 145. Generally, deficient training can only amount to the requisite deliberate indifference "where the failure to train has caused a pattern of violations." Berg v. County of Allegheny, 219 F.3d 261, 276 (3d Cir.2000). An exception exists, however, and a "failure to train" Monell claim may proceed absent a pattern of violations where (1) "a violation of

federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools [or skills] to handle recurrent situations," and (2) the likelihood of recurrence and predictability of the violation of a citizen's rights "could justify a finding that [the] policymakers' decision not to train an officer reflected 'deliberate indifference' to the obvious consequence of the policymakers' choice-namely, a violation of a specific constitutional or statutory right." Kline, 255 F. Appx. at 629 (quoting Brown, 520 U.S. at 409).

      Plaintiff asserts that Dauphin County Prison and Warden DeRose failed to properly supervise and/or train prison staff, which, she alleges, resulted in discriminatory treatment of minorities at the prison. However, as noted above, the failure to promptly provide toilet paper to an inmate at the prison states neither a constitutional nor federal law violation. Moreover, the facts as averred in the complaint do not indicate that the need to act is so obvious that a failure to take corrective measures is likely to result in the violation of constitutional rights such that Defendants can be held deliberately indifferent. The allegations in the complaint concerning these Defendants fail to state facts establishing that they were deliberately indifferent to her inasmuch as she is unable to show a serious risk of harm to her health or safety. The factual averments also fail to suggest that such actions are likely to result in a constitutional violation, since case law has

15

held to the contrary. In sum, the complaint is devoid of any reference to other minorities against whom this alleged discriminatory treatment policy was directed. A claim for municipal liability has not, therefore, been stated. Consequently, it is recommended that Defendants' motion to dismiss Plaintiff's claim for municipal liability (Count I) be granted

**V. Recommendation**

Based on the foregoing, it is respectfully recommended that Defendants' Motion to Dismiss (Doc. 3) be granted.

Date: February 17, 2011            s/ William T. Prince
                                                          William T. Prince
                                                          United States Magistrate Judge